UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

PJ FOOD SERVICE, INC. and
TRANS PAPA LOGISTICS, INC.,

    Plaintiffs,

v.

APCO PETROLEUM CORP., AMAR S.
GILL, MANPREET S. GILL, and
KASHMIRA SINGH,

    Defendants.

CIVIL NO. 16-1853(NLH)(AMD)

**OPINION**

---

**<u>APPEARANCES</u>:**

DANIEL C. FLEMING
WONG FLEMING
821 ALEXANDER ROAD
SUITE 200
PRINCETON, NEW JERSEY 08540

BENJAMIN C. FULTZ
COREY M. SHAPIRO
FULTZ MADDOX DICKENS PLC
101 SOUTH FIFTH STREET, 27TH FLOOR
LOUISVILLE, KENTUCKY 40202

    On behalf of plaintiffs

TREVOR J. COONEY
ARCHER & GREINER, PC
ONE CENTENNIAL SQUARE
PO BOX 3000
HADDONFIELD, NJ 08033-0968

    On behalf of defendants APCO Petroleum Corp., Amar S. Gill,
    and Manpreet S. Gill[1]

---

[1] Defense counsel was substituted after the briefing of
defendants' motion to dismiss but prior to the issuance of the
Court's decision on the motion.  (Docket No. 32.)

**HILLMAN**, District Judge

This case involves gas station employees' alleged theft of over $790,000 by using fuel credit card numbers stolen from plaintiffs' delivery drivers. Presently before the Court is the motion of defendants, APCO Petroleum Corp., Amar S. Gill, and Manpreet S. Gill, to dismiss two counts in plaintiffs' complaint: Count III against the individual defendants for negligence and Count IV against APCO for violations of New Jersey's Consumer Fraud Act ("NJCFA"). For the reasons expressed below, defendants' motion will be denied.

BACKGROUND

Plaintiff PJ Food Service, Inc. owns and operates a Quality Control Center ("QCC") located in New Jersey, and the QCC supplies various restaurants throughout the Northeast. Plaintiff Trans Papa Logistics, Inc. employs truck drivers with commercial driver's licenses ("CDLs") who handle deliveries from the QCC to restaurants. Trans Papa provides its CDL truck drivers with debit cards to purchase fuel while using the company's vehicles for deliveries. Only certain gas stations accept these fuel cards as a form of payment, including defendant APCO, which owns and operates gas stations in New Jersey under the brand "Valero," including a few locations that are near the QCC.

According to plaintiffs' complaint, at some point prior to

October 2012, Trans Papa employees used their respective fuel cards at some of the APCO-owned Valero gas stations near the QCC to buy gas.  Plaintiffs allege that during the course of these legitimate transactions APCO employees working at APCO-owned gas stations improperly obtained the account numbers for several fuel cards, as well as the unique individual authorization codes associated with each fuel card and used that information to make unauthorized charges to the fuel cards.

For example, on October 4, 2012, at 3:17am, APCO employees working at the APCO-owned Valero located at 2040 Rt. 130 North in South Brunswick, New Jersey initiated a transaction using a fuel card, which resulted in a charge of $599.76 that Trans Papa paid to APCO.  Based upon GPS data, there were no Trans Papa trucks at or near the South Brunswick Valero at the time of the transaction.  The Trans Papa employee to whom that fuel card was assigned was not anywhere near the South Brunswick Valero at that time, and Trans Papa did not receive any fuel at that time.

Plaintiffs allege that over the next 31 months, APCO and its employees initiated over 1,300 bogus additional transactions at the South Brunswick Valero using Trans Papa fuel cards for which Trans Papa received no fuel and for transactions that were not authorized by Trans Papa.  Ultimately, APCO received at least $790,378.20 from Trans Papa as a result of the bogus

transactions.

Plaintiffs demanded the return of the money improperly taken by APCO, but APCO and its president/director, Amar S. Gill, and its chief operating officer/director, Manpreet S. Gill, refused. As a result, plaintiffs have filed the instant complaint against APCO and the Gills.[2]   Plaintiffs have asserted claims against APCO for conversion (Count I), unjust enrichment (Count II), negligence (Count III), and violation of the "Consumer Fraud Act"[3] (Count IV).   Plaintiffs have asserted claims against the Gills individually for negligence (Count III).

Defendants have moved to dismiss Count IV because they contend that plaintiffs' claims do not state a claim for consumer fraud as defined by the NJCFA, N.J.S.A. 56:8-1 et seq.   The Gills have also moved to dismiss Count III because they argue that this

---

[2] Plaintiffs named as a defendant Kashmira Singh, whom plaintiffs claim was president of APCO during part of the relevant time period.   Singh has not appeared in the action, and defendants' brief in support of their motion to dismiss noted that they "have no knowledge of the fourth defendant, Kashmira Singh." (Docket No. 11-1 at 7 n.2.)

[3] Even though the complaint does not specify the "Consumer Fraud Act" that defendants allegedly violated, plaintiffs and defendants agree that Count IV refers to the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., which is evidenced by plaintiffs' demand for treble damages under N.J.S.A. 56:8-19 in plaintiffs' "Prayer for Relief."   (Amend. Compl., Docket No. 9 at 9.)

count is one for negligent hiring/supervision which is cognizable only as a claim against the employer, APCO, and not maintainable against the corporate officers individually, particularly when there are no allegations relating to piercing of the corporate veil.  Plaintiffs have opposed defendants' motion.

### DISCUSSION

**A.   Subject Matter Jurisdiction**

This Court has jurisdiction over this matter based on the diversity of citizenship of the parties and an amount in controversy in excess of $75,000, exclusive of interests and costs, pursuant to 28 U.S.C. § 1332(a).  Trans Papa Logistics, Inc. is incorporated in Kentucky with its principal place of business in Louisville, Kentucky, and is a wholly owned subsidiary of PJ Food Service, Inc.  PJ Food Service, Inc. is incorporated in Kentucky with its principal place of business in Louisville, Kentucky.  APCO is incorporated in New Jersey with its principal place of business in Bordentown, New Jersey.  Amar S. Gill, Manpreet S. Gill, and Kashmira Singh are citizens of New Jersey.

**B.   Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court

must accept all well-pleaded allegations in the complaint as
true and view them in the light most favorable to the plaintiff.
Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well
settled that a pleading is sufficient if it contains "a short
and plain statement of the claim showing that the pleader is
entitled to relief." Fed. R. Civ. P. 8(a)(2).  Under the
liberal federal pleading rules, it is not necessary to plead
evidence, and it is not necessary to plead all the facts that
serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 562
F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal
Rules of Civil Procedure do not require a claimant to set forth
an intricately detailed description of the asserted basis for
relief, they do require that the pleadings give defendant fair
notice of what the plaintiff's claim is and the grounds upon
which it rests."  Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S.
147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks
"'not whether a plaintiff will ultimately prevail but whether
the claimant is entitled to offer evidence to support the
claim.'"  Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007)
(quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also
Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in
Twombly expounded the pleading standard for 'all civil actions'

. . . .”); <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009) (“<u>Iqbal</u> . . . provides the final nail-in-the-coffin for the ‘no set of facts’ standard that applied to federal complaints before <u>Twombly</u>.”).

Following the <u>Twombly/Iqbal</u> standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6).  First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  <u>Fowler</u>, 578 F.3d at 210 (citing <u>Iqbal</u>, 129 S. Ct. at 1950).  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a “‘plausible claim for relief.’” <u>Id.</u> (quoting <u>Iqbal</u>, 129 S. Ct. at 1950).  A complaint must do more than allege the plaintiff's entitlement to relief.  <u>Id.</u>; <u>see also</u> <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the “Supreme Court's <u>Twombly</u> formulation of the pleading standard can be summed up thus: ‘stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest’ the required element.  This ‘does not impose a probability requirement at the pleading stage,’ but instead ‘simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of’

the necessary element"). A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997). The defendant bears the burden of showing that no claim has been presented. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

C. **Analysis**

1. ***Plaintiffs' New Jersey Consumer Fraud Act claims***

Defendants argue that plaintiffs' count for violations of

8

the NJCFA fails because the claims in this case – unauthorized charges to plaintiffs' fuel debit cards – are not the type contemplated by the NJCFA.

The objective of the NJCFA was "to greatly expand protections for New Jersey consumers," with the original purpose of "combat[ing] sharp practices and dealings that victimized consumers by luring them into purchases through fraudulent or deceptive means."  D'Agostino v. Maldonado, 78 A.3d 527, 536 (N.J. 2013) (quotations and citations omitted).  When interpreting the NJCFA, a court must be "informed by the deterrent and protective purposes" of the NJCFA, and the NJCFA's drafters "expected the Act to be flexible and adaptable enough to combat newly packaged forms of fraud and to be equal to the latest machinations exploiting the vulnerable and unsophisticated consumer."  Id. at 538 (quotations and citations omitted).

The NJCFA requires a plaintiff to prove three elements:  1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.  Id. at 536 (quotations and citations omitted).  The NJCFA defines an "unlawful practice" to be:

The act, use or employment by any person of any

9

> unconscionable commercial practice, deception, fraud, false
> pretense, false promise, misrepresentation, . . . in
> connection with the sale or advertisement of any
> merchandise . . . whether or not any person has in fact
> been misled, deceived or damaged thereby, is declared to be
> an unlawful practice . . . .

N.J.S.A. 56:8-2.  An ascertainable loss under the NJCFA is one
that is "quantifiable or measurable," not "hypothetical or
illusory."  D'Agostino, 78 A.3d at 537 (quotations and citations
omitted).

In this case, defendants argue that their alleged "unlawful
practice" does not fall under the NJCFA's purview because that
element of a viable NJCFA claim requires deception and fraud "in
connection with the sale or advertisement of any merchandise,"
which is not present here.  Defendants argue that plaintiffs'
allegations make clear that their fuel cards were charged but
they did not receive any fuel.  Thus, defendants contend that
there is no claim of misrepresentation, fraud or deception in
the sale of merchandise, because there was no sale of
merchandise in the form of fuel.

Defendants also argue that even though plaintiffs allegedly
lost over $790,000, which amount is clearly ascertainable, their
loss was not the "result of the use or employment by another
person of any method, act, or practice declared unlawful under"
the NJCFA.  See N.J.S.A. 56:8-19 ("Action or counterclaim by

injured person; recovery of treble damages and costs").

In their opposition to defendants' motion, plaintiffs argue that defendants' construction of the NJCFA's "unlawful practice" element is too narrow, especially considering the broad scope of the NJCFA.  Plaintiffs contend that defendants' interpretation would condone a company's scheme to charge its customers without authorization and render it a proper business ethic.

Plaintiffs also challenge defendants' argument that the NJCFA does not apply because the fuel card charges did not result in the sale of fuel.  Plaintiffs contend that defendants' sale of fuel resulted in defendants' improper access to plaintiffs' fuel cards, and therefore defendants' unlawful practice was "in connection" with the sale of merchandise.

Finally, as to the ascertainable loss element, plaintiffs argue that because the measure of damages in a consumer fraud case is the difference between the value of what was promised and what was received, their damages are the full amount of the unauthorized charges.

The Court finds that the circumstances in this case as pled in plaintiffs' complaint are the type of "unlawful practices" contemplated by the NJCFA.  Defendants argue that to fall within the scope of the NJCFA, plaintiffs' claims would have to allege that defendants used fraudulent or deceptive methods to sell

11

fuel, such as, for example, if defendants advertised one price for fuel to draw in customers, but deceptively charged plaintiffs' fuel cards a higher price or provided plaintiffs with a lower grade gasoline than advertised, resulting in a $790,000 loss.

We disagree with defendants' narrow construction of the NJCFA.  Even though plaintiffs' allegation do not implicate classic bait and switch schemes or deceptive advertising, plaintiffs' claims still sound in consumer fraud.  When accepting plaintiffs' claims as true, defendants' actions of stealing plaintiffs' fuel card access codes and debiting $790,000 of plaintiffs' money for phantom fuel were "deceptive" and "fraudulent" and caused plaintiffs an "ascertainable loss." Moreover, these actions were "in connection" with defendants' sale of fuel, at least because that is how defendants obtained plaintiffs' fuel card information in the first place.

First, defendants' argument ignores the simple and plain language of the statute.  The statute lists several unlawful practices in the disjunctive – ordinary "fraud" being one of them - and expressly eliminates any requirement to prove that the defrauded person was actually deceived.  As applied here, the statute reads:

The act, use or employment by any person of any . . . .

12

fraud . . . in connection with the sale . . . of any
merchandise . . . . whether or not any person has in fact
been misled, deceived or damaged thereby, is declared to be
an unlawful practice . . . .

N.J.S.A 56:8-2.

The facts alleged, if proven by Plaintiffs, clearly
constitute a species of fraud.  Defendants appear to be in the
business of selling fuel.  Plaintiffs allege that they made
legitimate purchases of fuel through debit cards that were later
charged for unsolicited and unapproved transactions in which no
fuel was sought to be purchased or ever delivered.  Such
transactions are fraudulent by their very nature and inherently
deceptive.  Plaintiffs had purchased gas from defendants in the
past and its drivers had been authorized to make purchases at
Defendants' stations.  This likely made Plaintiffs an easier
target for deception with the allegedly fraudulent charges
representing, either implicitly or explicitly, a false
representation that a delivery of fuel had occurred and hence
the charge to the debit card.  Such transactions appear to
easily qualify as "fraud, false pretense, . . ., [or]
misrepresentation . . . ."  N.J.S.A 56:8-2.

Second, the defendants' argument is too clever by half.
The alleged unauthorized charges constitute a "sale of
merchandise" under any fair reading of this remedial statute.

13

Imagine that a car dealer accepts payment from a consumer for a Cadillac and when the customer arrives to accept delivery, the dealer trots out a donkey with a Cadillac medallion strung around its neck.  If the customer refuses the non-conforming delivery would the law say no sale had occurred within the meaning of the statute because the defrauded customer refused to ride away on the donkey?  Stated differently, would the law require the customer to accept the donkey in order to have a claim under the NJCFA?  The answer would seem to be no.

Moreover, if the answer to the question were yes the law would sweep within its reach those transactions in which the fraudster delivered something of any, even trivial, value and exclude those whose fraud was complete.  Imagine that the car dealer purports to sell a Cadillac, accepts the purchase price, and then delivers nothing.  Would we say that customer did not have a NJCFA claim because no delivery was made but the customer who rode away on the donkey would have such a claim?

We realize that defendants' argument is more nuanced than the examples above might suggest in that they argue there was no pretense of a sale at all.  As noted, we reject that position since the financial transaction alone, purporting to be a sale of fuel, between parties who had engaged in identical legitimate transactions in the past, is more than enough to satisfy the

14

NJCFA's definition of "sale."  But a more important principle is at stake.  The law should not reward a fraudster whose stealth is more complete.  The Court will refrain from quoting Mr. Bumble directly, but the legislature could not have been so idiotic as to punish those whose fraud was partial and immunize those whose fraud was whole.

The only reasonable interpretation of the statute is that when money changes hands through fraud or other deception concerning an item of merchandise a "sale" occurs within the meaning of the statute even when no delivery of merchandise occurs.  One might even say, especially when no delivery occurs.

Even if the Court's interpretation of the word "sale" is wrong the complaint alleges a direct nexus between consummated legitimate sales of fuel and the alleged fraudulent charges. The Complaint alleges that the defendants were able to engage in the fraudulent transactions because they had misappropriated the access codes during, or as a result of, the legitimate transactions.  These fraudulent sales could therefore be fairly said to have been "in connection" with defendants' other sales of fuel within the meaning of the statute, at least because that is how defendants allegedly obtained plaintiffs' fuel card information in the first place.

Lastly, Plaintiffs have alleged an ascertainable loss

15

resulting from an act prohibited by NJCFA and pled with the requisite specificity.  If Plaintiffs prove that the sales were unauthorized and no fuel delivered, the loss is the amount of the entire sale and as a matter of causation is directly tied to the fraudulent transaction itself.  As defendants apparently concede, the loss here is more ascertainable than it would be in many other NJFCA cases where the difference between what was promised and what was delivered must be calculated.  Here, the amount of the loss equates directly to the amount of the sale.

As for the requirement to plead fraud with particularity, Exhibit A to the Complaint is a comprehensive chart of the allegedly fraudulent transactions and more than satisfies the obligation to allege the "who, what, where, when, and how" of the alleged fraud required by Federal Civil Procedure Rule 9(b).

Thus, plaintiffs have sufficiently pleaded all three of the elements to state a viable NJCFA claim.  See D'Agostino, 78 A.3d at 536.  Those allegations, in conjunction with the broad remedial purpose of the NJCFA to remedy fraud by a business on its customers, permit plaintiffs' count against defendants for NJCFA violations to stand.

### 2. *Plaintiffs' negligence claims against the individual defendants*

The individual defendants, Amar Gill and Manpreet Gill,

16

contend that plaintiffs' negligence claims against them are for negligent hiring and supervision, and such claims must be dismissed because they are only actionable against the corporate employer, APCO, and not against them individually.  Plaintiffs contest defendants' position, arguing that corporate officers are not shielded from liability for their own torts.  This issue presents a much closer call in part because both propositions of law are generally correct.

Plaintiffs' negligence count provides:

38. When Trans Papa purchased fuel from APCO, Trans Papa had a reasonable expectation that APCO would utilize the account information solely for legitimate fuel purchases and exercise reasonable care to ensure that its employees only processed authorized transactions.

39.  Defendants knew or should have known through the exercise of reasonable care that the bogus fuel purchases processed by their employees were not legitimate charges to Trans Papa but allowed said activity to continue for a period of over two years.

40.  Defendants failed to exercise their duty of care by, *inter alia*,

a. Failing to implement reasonable anti-fraud and/or anti-theft procedures;

b. Failing to monitor the activities of its employees and the thousands of fuel transactions which occurred when no fuel was actually sold;

c. Failing to notice misappropriation of at least $790,378.20 in bogus transactions and possibly more;

d. Failing to implement reasonable security measures to protect its customer's account information;

17

41.  As a result of Defendants' failures, Defendants obtained at least $790,378.20 from Trans Papa as a result of the bogus fuel charges processed by its employees, as described with specificity on Exhibit A.

42.  Defendants' negligence caused Trans Papa to incur the losses described on Exhibit A.

(Docket No. 9 at 7-8.)

Under New Jersey law, "the fundamental propositions [are] that a corporation is a separate entity from its shareholders, and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." Richard A. Pulaski Const. Co., Inc. v. Air Frame Hangars, Inc., 950 A.2d 868, 877 (N.J. 2008) (quotations and citations omitted).  "Except in cases of fraud, injustice, or the like, courts will not pierce a corporate veil."  Id. (quotations and citations omitted).  Thus, in order to pierce the corporate veil and reach behind the corporate structure, "the party seeking an exception to the fundamental principle that a corporation is a separate entity from its principal bears the burden of proving that the court should disregard the corporate entity."  Id. at 877-78 (quotations and citations omitted).

A corporate officer is not insulated from his own tortious conduct, however.  "Corporate officers are liable to persons injured by their own torts, even though they were acting on

18

behalf of the corporation and their intent was to benefit the corporation." Charles Bloom & Co. v. Echo Jewelers, 652 A.2d 1238, 1243 (N.J. Super. Ct. App. Div. 1995) (citations omitted) (explaining that any corporate officer or director is liable for conversion who participates by aid, instigation, or assistance in a conversion, and further providing that "a director or officer who commits a tort, or who directs the tortious act to be done, or participates or cooperates therein, is liable to third persons injured thereby, even though liability may also attach to the corporation for the tort").

Plaintiffs assert that the defendants – both APCO and the Gills – failed in their duty to prevent the unauthorized use of plaintiffs' fuel cards and discover the unaccounted for $790,000 surplus in APCO accounts. Although defendants characterize Count III as "negligent supervision" it is not denominated as such in the Complaint. Moreover, while certain alleged failures in the Complaint are fairly described as failures of supervision,[4] Count III also alleges a separate duty to safeguard

---

[4] For example, Count III faults defendants for "Failing to monitor the activities of its employees and the thousands of fuel transactions which occurred when no fuel was actually sold." (Docket No. 1 at 8)  Similarly, Paragraph 16 of the Complaint alleges the harm occurred "due to lack of appropriate oversight [of employees]. (Docket No. 1 at 4)

credit and credit card information provided to vendors in trust.
Given the Complaint's allegations that: a) the Gills are the
only directors of defendant corporations, b) serve as its chief
officers, c) profited from the fraudulent scheme, coupled with a
separate count for conversion (Count 1) we are unable to
conclude at this juncture that the individual defendants owed no
duty to the defendants.

Absent clear case law that precludes individual liability
for such a tort, or New Jersey law that holds that no such tort
exists, we conclude that Plaintiffs make out a plausible claim
within the confines of the Twombly/Iqbal standard for negligent
failure to safeguard Plaintiffs' credit information.  The
precise parameters of such a tort and whether these Plaintiffs
can prove the individuals committed it, we leave to the
discovery process and whatever subsequent motion practice
appropriately follows.

Similarly, we leave for another day an issue not clearly
before us; that is, whether the facts, as revealed by discovery,
would allow for the piercing of the corporate veil for the more
limited tort of negligent supervision.[5]  Consequently, Count III

---

[5] The Court notes that negligent hiring and supervision has not
been held to be the type of tort deemed sufficient to reach
behind the corporate structure and hold a corporate officer
liable.  See Duran v. Warner, 2013 WL 4483518, at *8 (D.N.J.

against the individual defendants will not be dismissed at this time.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss Count IV against APCO and Count III against the individual defendants will be denied.  An appropriate Order will be entered.


Date: December 9, 2016                s/ Noel L. Hillman
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.

---

2013) (finding that because the tort of negligent hiring or retention is cognizable against an employer through the principles of agency and vicarious liability, it is not cognizable against individual supervisors in their personal capacity).  The Duran court states, "Under New Jersey law, a negligent supervision claim can only be brought against the employer entity and is not cognizable against the individual supervisor," citing Di Cosala v. Kay, 450 A.2d 508, 515 (N.J. 1982).  Because we find that Count III alleges a tort broader that mere negligent supervision and is premised on an underlying claim of fraud which may provide an independent basis for piercing the corporate veil, we do not make a decision on that issue at this time.